IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

In re

PACIFIC CARGO SERVICES,
LLC,

          Debtor.

Case Nos. 6:13-mc-00369-AA
          3:13-cv-01978-AA
          OPINION AND ORDER

Wilson C. Muhlheim
Luvaas Cobb
777 High Street, Suite 300
Eugene, Oregon 97440
     Attorney for appellant General Electric Capital Corporation

Susan S. Ford
Sussman Shank, LLP
1000 SW Broadway, Suite 1400
Portland, Oregon 97205
     Attorney for appellee Hilco Industrial, LLC

David A. Foraker
Greene & Markley, PC
1515 SW Fifth Avenue, Suite 600
Portland, Oregon 97201
     Attorney for debtor Pacific Cargo Services, LLC

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

General Electric Capital Corporation ("GE") appeals the bankruptcy court's decisions: (1) authorizing and approving Hilco Industrial, LLC's ("Hilco") asset purchase agreement ("Sale Order"); and (2) denying GE's motion to vacate the Sale Order. GE also moves to stay the Sale Order during the pendency of this appeal. After the transaction contemplated by the Sale Order was completed, Hilco filed a motion to dismiss GE's appeal as moot. The estate trustee for the debtor, Pacific Cargo Services, LLC ("Pacific Cargo"), joins in Hilco's motion. For the reasons set forth below, GE's motion is denied and Hilco's motion is granted. The bankruptcy court's decision is therefore affirmed and this appeal is dismissed.

## BACKGROUND

On August 8, 2012, Pacific Cargo and GE entered into two Loan and Security Agreements, through which GE financed Pacific Cargo's purchase of twelve Hino trucks.[1] Pacific Cargo agreed to pay GE the original principal balance plus pre-commuted interest, totaling $1,240,006.32, and granted GE a first priority security interest in the trucks. Despite receiving this loan, Pacific Cargo was unable to manage its business in the ordinary course and, on January 28, 2013, filed a petition for relief under Chapter 11 of the

_____

[1] Pacific Cargo purchased one of these trucks from GE prior to the bankruptcy petition date, such that GE's interest is comprised of the remaining eleven Hino trucks.

Bankruptcy Code. Excerpt of Record ("ER") 66.[2] On March 6, 2013, GE filed a proof of claim in the amount of $1,005,289.78.

I.   Bankruptcy Court Proceedings

Pacific Cargo, its creditors, and the bankruptcy court decided to focus on a going concern sale of Pacific Cargo's business in order to maximize value for creditors and maintain employment opportunities for Pacific Cargo's employees. ER 224. Pacific Cargo applied to retain Equity Partners CRB LLC ("Equity Partners") as the broker for the sale after completing an investigation and interview process between Equity Partners, Pacific Cargo, the creditors' committee, and Graystone Capital, Pacific Cargo's primary secured creditor. ER 222-88.

On June 13, 2013, Pacific Cargo filed a motion to authorize and schedule the auction and approve bidding procedures. ER 218. On June 25, 2013, following a hearing, the bankruptcy court entered an order approving Equity Partners as the broker. ER 142-43, 180. Thereafter, Equity Partners engaged in substantial marketing efforts - i.e. setting up a data room for review of documents and information relating to Pacific Cargo, placing an advertisement in The Wall Street Journal, directing targeted outreach, etc. ER 458, 462.   That same day, the bankruptcy court also entered an order approving Pacific Cargo's auction motion with modifications ("Auction Order"). ER 143. The Auction Order was served on GE by

---

[2] Because the parties did not chronologically number the appellate record, which also includes duplicates, the Court cites to the page numbers assigned in the docket for ease of reference.

mail and electronically. Specifically, it was sent to GE's local counsel, who was also its counsel of record, and to the other address specified on GE's proof of claim. ER 600-01. After the Auction Order was not appealed, the bankruptcy court made it final. In re Pac. Cargo Servs., LLC, 2013 WL 5299545, at *5 (Bankr.D.Or. Sept. 18, 2013).

On June 26, 2013, Cardinal Courier, a large logistics and transportation company, made the "stalking horse" bid on Pacific Cargo as a going concern in order to initiate the auction process; the bid was a "low ball" offer, setting the floor for the competitive auction, and was not expected to end up as the winning bid. ER 232-33, 238, 270, 431. The auction was structured so that interested parties could not only bid on Pacific Cargo's entire business, but also on various lots of assets, encompassing the collateral of the various secured creditors, including GE. ER 243; see also ER 240-41.

On July 10, 2013, the notice of intent to auction Pacific Cargo's assets ("Notice of Intent") was served by mail on GE's registered agent, CT Corporation System ("CT"), and local counsel and counsel of record, Wilson Muhlheim, as well as to the address set forth in GE's proof of claim. This notice set the auction for July 23, 2013, at 9:00 a.m., and advised that a hearing, to approve the auction sale results and to consider any objections, would be held that same day at 1:30 p.m.

On July 11, 2013, Pacific Cargo filed a motion to sell its assets, including GE's collateral, free and clear of liens, claims,

Page 4 - OPINION AND ORDER

and encumbrances outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b) and (f) ("Sale Motion"). That same day, the Sale Motion was served on GE's registered agent, and its local counsel and counsel of record, both electronically and by mail. ER 346.

The auction proceeded as scheduled on July 23 and July 24, 2013, overseen by Equity Partners. ER 429-38. At a hearing late in the afternoon on July 24, counsel for Pacific Cargo reported that Hilco[3] was the high bidder on Lot 2, in the amount of $180,000, encompassing the eleven Hino trucks in which GE had a security interest. ER 317-19. Pacific Cargo requested good faith purchaser determinations, pursuant to 11 U.S.C. § 363(m), from the bankruptcy court as to the various buyers at the auction, but no evidence was presented at that time. ER 329-30. GE did not appear or participate in the auction or the subsequent hearings. ER 317-18, 329.

On July 31, 2013, the Sale Order was entered approving, in relevant part: (1) the purchase of Pacific Cargo's eleven Hino trucks by Hilco for $180,000; and (2) Pacific Cargo's receipt of ten percent ($18,000) of the sale proceeds as a carve out. ER 139. The Sale Order concluded "one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied," such that "[t]hose holders of liens, claims, encumbrances and interests who have been properly noticed and who did not object to

---

[3] Hilco is an international industrial auctioneer, liquidator, and appraiser. Its business frequently involves buying and reselling industrial machinery and equipment at a profit.

the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code." ER 137.

On August 2, 2013, following an expedited hearing, the bankruptcy court entered an order converting Pacific Cargo's Chapter 11 case into a Chapter 7 case because Pacific Cargo's assets had been sold and it was no longer operating as a going concern. ER 80, 223. On August 8, 2013, GE filed a motion to vacate the Sale Order, alleging that it first heard about Hilco's purchase of the Hino trucks when Hilco's representatives contacted it to obtain titles thereto. ER 80, 478. In particular, GE argued that the Sale Order should be vacated because it did not receive proper notice and the trucks were sold for below their fair market value. ER 80-81. On August 16, 2013, the bankruptcy court conducted a preliminary hearing on GE's motion. ER 346, 350. On August 30, 2013, following expedited discovery from both Hilco and GE, and further briefing, the bankruptcy court held an evidentiary hearing. ER 372. On September 18, 2013, the bankruptcy court denied, via a Memorandum Opinion ("Opinion"), GE's motion to vacate. See generally Pac. Cargo Servs., 2013 WL 5299545.

On September 23, 2013, GE moved to stay the Sale Order. ER 106. On October 2, 2013, the bankruptcy court held a hearing on GE's motion to stay. ER 171-72. Ultimately, the bankruptcy court denied GE's motion initially and upon reconsideration.[4] ER 171-72,

---

[4] In denying GE's motion to stay, the bankruptcy court stipulated that any renewed motion should be "supported by a superseadeas bond in an appropriate amount to protect the interests of Hilco and the bankruptcy estate." ER 172. GE,

Page 6 - OPINION AND ORDER

196-97.

## II. District Court Proceedings

On October 1, 2013, GE filed an appeal in this Court. On October 17, 2013, GE moved to stay the Sale Order, although GE did not request an expedited hearing. Before GE's motion to stay was fully briefed, GE turned over title for the Hino trucks to Pacific Cargo. On November 1, 2013, the transfer of the Hino trucks to Hilco closed in exchange for $180,000.

On December 30, 2013, Hilco moved to dismiss GE's appeal as moot under 11 U.S.C. § 363(m). Subsequently, Hilco resold all eleven Hino trucks and the proceeds were deposited into Hilco's operating bank accounts, and have been used and consumed in the regular course of business. On January 15, 2014, Pacific Cargo joined Hilco's motion.

## STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court independently reviews findings of fact for clear error, while conclusions of law are reviewed de novo. In re Schwarzkopf, 626 F.3d 1032, 1035 (9th Cir. 2010). Mixed questions of law and fact are also reviewed de novo. Educ. Credit Mgmt. Corp. v. DeGroot, 339 B.R. 201, 214-15 (D.Or. 2006) (citing In re Rifino, 245 F.3d 1083,

---

however, filed its renewed motion absent a superseadeas bond. It is common practice to require the posting of a supersedeas bond when a party requests a stay, unless "the appellant's financial condition prevents it from obtaining such a bond." In re Byrd, 172 B.R. 970, 974 (Bankr.W.D.Wash. 1994); Vacation Vill., Inc. v. Clark Cnty., Nev., 497 F.3d 902, 913 (9th Cir. 2007). In requesting a stay before this Court, GE continues to oppose the posting of a superseadeas bond despite the fact that there is no evidence that it was or is financially unable to do so.

1087 (9th Cir. 2001)).

## DISCUSSION

GE appeals the bankruptcy court's Sale Order and Opinion. Specifically, GE argues "that the Bankruptcy Court erred in finding good faith because it failed to make a finding of value and erroneously found that the auction alone established value." GE's Resp. to Mot Dismiss 2. In addition, GE contends that Hilco failed to establish the requisite elements of statutory mootness because the bankruptcy court erroneously approved an un-negotiated carve out, found that notice was sufficient, and determined the sale was valid under 11 U.S.C. § 363(f). Conversely, Hilco asserts that the bankruptcy court interpreted the law correctly and, therefore, accurately determined its status as a good faith purchaser. Further, since GE failed to procure a stay and the elements of 11 U.S.C. § 363(m) are met, Hilco argues that GE's appeal is moot.

I.   Motion to Stay

The district court may enter a stay during the pendency of an appeal to protect the respective rights of the parties. In re Ahmed, 420 B.R. 518, 524 n.5 (Bankr.C.D.Cal. 2009). The court must consider four factors when analyzing a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (citation and internal quotations

Page 8 - OPINION AND ORDER

omitted). "The party moving for a stay has the burden on each of these elements." In re Shenandoah Realty Partners, L.P., 248 B.R. 505, 510 (W.D.Va. 2000) (citation omitted).

As discussed in section II, GE is not likely to succeed on the merits of its appeal. Therefore, the Court need not consider the other three factors because failure on the merits is dispositive. Nken, 556 U.S. at 434; In re N. Plaza, LLC, 395 B.R. 113, 120-26 (S.D.Cal. 2008). Nevertheless, the Court also finds that if a stay were granted, the harm to GE would be outweighed by the harm to Hilco and the public interest. Accordingly, GE's motion to stay is denied.

II. Motion to Dismiss

The Bankruptcy Code's statutory mootness provision specifies:

[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Thus, pursuant to 11 U.S.C. § 363(m), an unstayed order authorizing the sale of property to a good faith purchaser cannot be invalidated or modified on appeal. In re S.W. Prods., 144 B.R. 100, 105 (B.A.P. 9th Cir. 1992); see also In re M Capital Corp., 290 B.R. 743, 748 n.4 (B.A.P. 9th Cir. 2003) ("section 363(m) merely limits appellate remedies in event of reversal by precluding any effect on the validity of the sale, but

Page 9 - OPINION AND ORDER

it does not preclude other remedies").[5]

Despite this general rule, statutory mootness does not apply, in pertinent part, where: (1) the purchaser acted in bad faith; (2) "the Appellant seeks to attack the sale of estate property on the grounds of improper notice"; or (3) the appellant challenges the validity of the sale made free of liens and encumbrances pursuant to 11 U.S.C. § 363(f). Sumwalt v. Equity Sec., 956 F.2d 275, 275 (9th Cir. 1992) (citing In re Onouli-Kona Land Co., 846 F.2d 1170, 1173 (9th Cir. 1988); In re Moberg Trucking Inc., 112 B.R. 362, 363 (B.A.P. 9th Cir. 1990)); In re Namco Capital Grp., Inc., 2011 WL 2312090, at *2-3 (C.D.Cal. June 7, 2011). These issues may be considered on appeal, even without a stay in place and after the subject assets have been transferred, because they each relate to a statutory element of a valid sale. See 11 U.S.C. § 363. Outside of these issues, where the sale has been effectuated in the absence of a stay, an appeal is moot. Sumwalt, 956 F.2d at 275. The party invoking 11 U.S.C. § 363(m) bears the burden of demonstrating that all of the statutory elements are met. In re Fitzgerald, 428 B.R. 872, 880 (B.A.P. 9th Cir. 2010).

GE raises four issues on appeal: (1) Hilco's status as a good faith purchaser for value; (2) whether the carve out was properly negotiated; (3) whether notice was sufficient; and (4) whether the

___

[5] To the extent GE asserts that nothing precludes the Court from furnishing the alternate equitable relief it proposes, even if it finds that Hilco was a good faith purchaser, GE's argument is unavailing. GE has not cited to, and this Court is not aware of, any authority where equitable relief has been granted in this or an analogous context, indicating that such relief is used rarely and only under circumstances not presented here.

sale was valid under 11 U.S.C. § 363(f).[6]

A.   Good Faith Purchaser

"[A] good faith purchaser is one who buys 'in good faith' and 'for value.'" In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992)(internal citation omitted). Lack of good faith is typically "shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" Id. (quoting In re Suchy, 786 F.2d 900, 902 (9th Cir. 1985)). As such, a good faith purchaser determination is generally not dependent on a sale generating a specific level of value, particularly in a public auction context. Id. In other words, "[a]n auction is sufficient to establish that the purchaser has paid value so long as the purchaser bought the debtor's property in good faith." Onouli-Kona, 846 F.2d at 1174 n.1 (citing Abbotts Dairies, 788 F.2d at 149).

Generally, the issue of good faith is factual and reviewed for clear error. In re Thomas, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted). GE contends, however, that the

---

[6] The Bankruptcy Code does not contain a carve out provision and GE has not cited to any authority indicating that a court may consider this issue where the elements of 11 U.S.C. 363(m) are met. In other words, unlike GE's other three challenges, the carve out issue is not a recognized exception to statutory mootness, likely because it is not a statutory element and would entail modification of the sale order.

bankruptcy court applied the wrong legal standard to determine that Hilco was a good faith purchaser. Specifically, GE attacks the bankruptcy court's use of a public auction to establish value and instead asserts that value must equate to a certain percentage of the asset's market price.

Here, it is undisputed that there was no collusion, fraud, or other impropriety. GE's Resp. to Mot. Dismiss 1; Hilco's Reply to Mot. Dismiss 3. In fact, GE conceded before the bankruptcy court that no such factors were present and that Hilco's purchase was an arms-length transaction. ER 393. Yet GE has not cited to, and the Court is not aware of, any authority in which value was successfully challenged after a public auction without allegations of fraud or collusion. See generally GE's Resp. to Mot. Dismiss; see also In re Lahijani, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("[t]he price achieved by an auction is ordinarily assumed to approximate market value when there is competition by an appropriate number of bidders [but] [w]hen competition is constrained . . . the price is less likely to be reliable and should be examined more carefully").

Indeed, the cases GE relies on in support of its assertion that the bankruptcy court erred in this regard involved fraud and/or collusion, or no affirmative evidence of good faith. See In re Schugg, 2006 WL 1455568, at *7 (D.Ariz. May 22, 2006) (value not established because evidence of fraud and collusion existed); Abbotts Dairies, 788 F.2d at 149 (value not established, despite the occurrence of an auction, because evidence of fraud and

Page 12 - OPINION AND ORDER

collusion existed); Fitzgerald, 428 B.R. at 872 (good faith not established, despite the occurrence of an auction, where there was no good faith determination made by the bankruptcy court, no evidence of good faith was presented, and allegations of fraud and collusion existed); Lahijani, 325 B.R. at 289-90 (good faith not established because there was a question as to whether the designated "high bidder" was actually the highest bidder); In re Perona Bros., Inc., 186 B.R. 833, 839-40 (D.N.J. 1995) (good faith not established due to the existence of an insider purchaser with an unexamined fiduciary relationship). Therefore, the bankruptcy court did not err as a matter of law in holding that the auction was sufficient to establish value for the Hino trucks.

Moreover, to the extent GE contends that no real auction occurred because "the debtor engineered a process in which only one party was prepared to bid on the lots in the room," such that value was not determined by the purchase price, its argument fails. GE's Resp. to Mot. Dismiss 2. Initially, Pacific Cargo's actions have no bearing on Hilco's rights pursuant to the Sale Order, especially because GE concedes that there is no collusion, fraud, or other impropriety at issue. Regardless, the record is replete with evidence that a competitive auction occurred. For example, the bidding procedures were approved at a hearing, well in advance of the auction, wherein most of Pacific Cargo's secured creditors participated. ER 243-47. As discussed in greater detail below, GE had the opportunity to object to the bidding procedures and auction process, but did not participate. Equity Partners advertised the

Page 13 - OPINION AND ORDER

auction; Hilco's attendance is evidence of Equity Partners' successful marketing. ER 263-65, 458, 471. Additionally, Hilco was outbid on other lots at the auction. ER 453, 471, 476. Under these circumstances, this Court finds no clear error in the bankruptcy court's factual finding that Pacific Cargo's assets were sold pursuant to a competitive auction.[7]

Finally, contrary to GE's assertion, the price paid by Hilco for the Hino trucks did not constitute an unconscionable windfall. The record indicates that the purchase price was calculated to provide a profit to Hilco and account for risks associated with the transaction. ER 527-28. Ms. Ford, Hilco's Vice President of Asset Sales, testified at the evidentiary hearing that, as of August 30, 2013, Hilco had received conditional, non-binding offers on the trucks ranging from $260,000 to $473,000. ER 546. "After subtracting expected transactional costs, marketing expenses, storage charges, and other amounts," Hilco represents that it "might have made a large or small profit from the re-sale of the trucks, and perhaps no profit at all." Hilco's Reply to Mot. Dismiss 13 (citations omitted). As such, the bankruptcy court did not err in determining that "Hilco's winning bid [is not] so inadequate that it supports setting [it] aside." Pac. Cargo Servs.,

---

[7] As Hilco observes, "[i]f GE did not like the proposed structure of the auction . . . it should have responded to the notices it received and objected to the Bidding Procedures Order." Hilco's Reply to Mot. Dismiss 15. Moreover, it is undisputed that Hilco played no role in the planning or execution of the auction, raising the question of "what, exactly, does GE believe Hilco should have done differently to act in 'good faith'?" Id. at 16.

2013 WL 5299545 at *23.

In sum, the bankruptcy court interpreted the law correctly and determined that a public auction, conducted in accordance with court-approved procedures and without fraud or collusion, is compelling evidence of value. <u>Pac. Cargo Servs.</u>, 2013 WL 5299545 at *23; <u>see also</u> <u>Onouli-Kona</u>, 846 F.2d at 1174 n.1; <u>Ewell</u>, 958 F.2d at 281-82. Accordingly, the bankruptcy court's finding that Hilco was a good faith purchaser for value pursuant to 11 U.S.C. § 363(m) was based on the proper legal standards and was not clearly erroneous.

B.    Notice

A valid sale "specifically requires a notice and hearing [such that] § 363(m) mootness is not applicable when the Appellant seeks to attack the § 363 sale of estate property on the grounds of improper notice." <u>Moberg Trucking</u>, 112 B.R. at 363-64 (citations and internal quotations omitted). Whether the notice of a sale in a bankruptcy case was sufficient requires analysis of several interrelated provisions of the Federal Rules of Bankruptcy Procedure. Rule 2002 states that creditors shall be given at least 21 days notice by mail of a proposed sale, "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2); <u>see also</u> Fed. R. Bankr. P. 6004(a). This rule provides further that such notice shall be sent to the mailing address specified in the creditors' proof of claims. Fed. R. Bankr. P. 2002(g)(1)(A).

Likewise, Rule 6004 specifies:

a motion for authority to sell property free and clear of liens or other interests shall be made in accordance with

Page 15 - OPINION AND ORDER

> Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

Fed. R. Bankr. P. 6004(c). In turn, Rule 9014 requires that a motion in a contested matter shall be served by first class mail, postage prepaid. Fed. R. Bankr. P. 9014(b); Fed. R. Bankr. P. 7004(b). Service on a United States corporation may be made by mailing a copy of the motion "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Bankr. P. 7004(b). In sum, notice regarding a proposed sale of the property of bankruptcy estate must be served by first class mail on an authorized representative of the creditor who will have some understanding as to what the piece of paper in the mail actually means.

GE made three arguments before the bankruptcy court regarding alleged deficiencies in the notices sent by Pacific Cargo: (1) notice relating to the auction - including the Notice of Intent and Sale Motion - should have been sent to GE's lead counsel, Reed Smith, LLP; (2) notice was not served at the address specified in GE's proof of claim; and (3) the Notice of Intent informed of a hearing in less than the 21 days. Pac. Cargo Servs., 2013 WL 5299545 at *6. The bankruptcy court considered each argument in detail and found that notice was sufficient under 11 U.S.C. § 363. Id. at *10.

The bankruptcy court determined that the notice sent to Mr.

Muhlheim was appropriate because he was the attorney of record, Reed Smith's connection to Pacific Cargo's bankruptcy was limited, and, if Mr. Muhlheim had been authorized to view the notices, he would have recognized their significance immediately. Id. at *18-19. Additionally, the bankruptcy court found that GE failed to provide sufficient evidence to overcome the presumption that notice was received since "the steps taken by Pacific Cargo to provide notice of the auction sale of its assets . . . were reasonable, appropriate and adequate under the Rules." Id. at *16. Finally, the bankruptcy court concluded that Pacific Cargo's actions were reasonably calculated to provide notice to all creditors because the Auction Order granting the shortened timeline was not appealed and, further, it provided similarly situated secured creditors sufficient time to participate adequately. Id. at *17.

On appeal, GE raises virtually the same notice issues. See GE's Mot. to Stay 10. Whether notice was received is a factual issue reviewed for clear error. In re Bucknum, 951 F.2d 204, 206 (9th Cir. 1991). As noted above, when applying the clear error standard, "a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (citations and internal quotations omitted). Additionally, "whether adequate due process notice was given in any particular instance is a mixed question of law and fact that [is] review[ed] de novo." Id. (citation omitted). After reviewing the record and briefs, the Court finds that the bankruptcy court's reasoning, as

Page 17 - OPINION AND ORDER

explained in the Opinion, is correct as to each allegation of error raised by GE.

Regarding GE's first assertion, notice sent to an attorney of record is generally adequate when it is reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Schicke, 97 Fed.App'x 249, 251 (10th Cir. 2004) (citation and internal quotations omitted). This is because "[a]n attorney of record is the attorney upon whom service is to be made, and to whom notices will be directed by the court." Local Bankr. R. ("LBR") 9010-1(b)(1); see also Shicke, 97 Fed.App'x at 251 (debtor complied with due process by serving notice of the bankruptcy petition on the creditor's attorney of record). GE admitted that Mr. Muhlheim's firm, Luvaas Cobb, was its attorney of record during Pacific Cargo's bankruptcy proceedings. ER 581, 602-04. It is further undisputed that Mr. Muhlheim remains the attorney of record for GE during these appellate proceedings. GE, however, withheld authorization for Mr. Muhlheim to view certain notices, likely as a cost saving measure; Reed Smith, GE's lead counsel, never filed a special notice requirement and Reed Smith attorneys Alexander Terras and Aaron Chapin did not apply for pro had vice admission until after GE moved to vacate the Sale Order. ER 581, 601-04. Under the circumstances, it was reasonable for Pacific Cargo to notify Mr. Muhlheim and not Reed Smith, such that the Notice of Intent and Sale Motion were served consistent with the Federal Rules of Bankruptcy Procedure.

Page 18 - OPINION AND ORDER

In any event, the record reflects that the Auction Order, Notice of Intent, and Sale Motion were, in fact, sent to and received by Mr. Mulheim. ER 468-69. If he had been authorized to review these notices, he would have understood and likely communicated their significance. Id. The fact that Mr. Muhlheim was precluded from doing so because he was not authorized by GE is immaterial to whether the bankruptcy court erred in finding that Pacific Cargo complied with the Bankruptcy Code's statutory notice provisions.

Regarding GE's second contention, proof of mailing a properly addressed and stamped notice creates a rebuttable presumption of its receipt. In re Williams, 185 B.R. 598, 599 (B.A.P. 9th Cir. 1995) (citation omitted). "If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." Id. at 599-600 (citation and internal quotations omitted). Accordingly, rebuttal of this presumption requires clear and convincing evidence. Bucknum, 951 F.2d at 207.

Here, Pacific Cargo provided evidence that the requisite notices were sent to GE. Pacific Cargo's counsel, Margot Lutzenhiser, testified that its mailing matrix was amended to incorporate the address specified in GE's proof of claim. ER 445, 464-65. David Cakarnis, the managing partner of DTI, the entity hired to handle the matrix mailing of the Notice of Intent, testified that, under his supervision, this notice was properly

Page 19 - OPINION AND ORDER

addressed and mailed by first class mail, postage prepaid, to all listed parties. ER 492. The amended certification of service for the Notice of Intent, from July 11, 2013, reflects service on GE at its proof of claim address, registered agent, and counsel of record. ER 466, 472, 477. Moreover, copies of the Sale Motion were properly addressed and mailed to GE's registered agent, as required by Rules 6004(c), 9014(b), and 7004(b)(3), and to GE's counsel of record. ER 350. Likewise, the Auction Order was properly addressed and mailed to GE at the address specified on its proof of claim and to its counsel of record. ER 466-68. The only pertinent rebuttal evidence GE provided was testimony from Elizabeth Steel, a litigation specialist at GE dealing with bankruptcy, stating she did not receive any notice of the sale. ER 571, 593; but see ER 571 (Ms. Steel testifying that her office received at least some of the documents sent to creditors).

Based on this record, the Court finds that GE failed to provide clear and convincing evidence to rebut the presumption that notice was received. As discussed above, GE conceded that its counsel of record, Mr. Muhlheim, received statutory notice, including the Notice of Intent and Sale Motion. ER 594. Additionally, GE admitted that its registered agent, CT, also received the Notice of Intent and Sale Motion prior to the public auction of Pacific Cargo's assets. ER 350, 356, 359, 472-74. There is no evidence in the record concerning what, if any, information was passed on to GE by CT regarding the Pacific Cargo asset sale. Regardless, because Pacific Cargo sent the requisite notices to the

Page 20 - OPINION AND ORDER

proper addresses, Ms. Steel's testimony does not constitute clear and convincing evidence, especially in light of the other evidence of record. Therefore, the bankruptcy court did not err in finding that Pacific Cargo presented credible evidence that notice was sent or that GE failed to rebut the presumption of receipt.

Concerning GE's third contention, GE is correct that Rule 2002(a) generally establishes a requirement of 21 days notice for parties with an interest in the sale of assets outside the ordinary course of business, "unless the court for cause shown shortens the time." Fed. R. Bankr. P. 2002(a). That is precisely what occurred here. The bankruptcy court, in order to best meet the needs of all parties involved, shortened the timeline after specifically finding that all creditors had received sufficient notice "of the Debtor's bid procedures and auction." Pac. Cargo Servs., 2013 WL 5299545 at *17. As the bankruptcy court observed, other similarly situated creditors participated effectively at the auction; indeed, some creditors even filed objections in advance of the sale, indicating that the notes - including the Auction Order, Notice of Intent, and Sale Motion - sent by Pacific Cargo furnished adequate time for creditors to respond and meaningfully participate. Id. Accordingly, the bankruptcy court did not err in rejecting GE's argument as to the shortened timeline.

For the reasons discussed above and in the bankruptcy court's Opinion, this Court finds that notice was sufficient under the circumstances presented here, such that GE's due process rights were not violated. Therefore, the bankruptcy court's decision is

Page 21 - OPINION AND ORDER

affirmed as to this issue.

C.    Free of Liens and Encumbrances

"A bankruptcy trustee may sell property of the estate free and clear of a lien or other interest where the holder of the lien or interest consents [under] 11 U.S.C. § 363(f)(2)." In re E. Airport Dev., LLC, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011) (citation omitted). "Those holders of Liens against the Debtor or their respective estates or any of the Acquired Assets who did not object . . . are deemed to have consented thereto." In re R Star Restaurants, Inc., 2010 WL 3329814, at *4 (Bankr.C.D.Cal. June 29, 2010). In other words, holders of liens, claims, encumbrances, and interests who have been properly noticed and who did not object to the sale motion are deemed to have consented to the sale. See, e.g., In re Blixseth, 2011 WL 1519914, at *14-18 (Bankr.D.Mont. Apr. 20, 2011).

GE contends, for the first time on appeal, that the bankruptcy court erred in finding that the sale of its collateral was valid pursuant to 11 U.S.C. § 363(b) and (f). Compare GE's Resp. to Mot. Dismiss 17, with ER 471. Initially, because GE failed to raise this issue below, it has not been preserved for appeal. See generally Pac. Cargo Servs., 2013 WL 5299545; see also In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (courts do "not consider an issue raised for the first time on appeal") (citation omitted). Nevertheless, as noted above, the bankruptcy court reviewed the sufficiency of the notice Pacific Cargo sent to GE and heard testimony. The court

Page 22 - OPINION AND ORDER

determined that GE consented to the sale based on its failure to object after receiving "adequate and legally sufficient" notice. Pac. Cargo Servs., 2013 WL 5299545 at *20. Because the record confirms that GE received sufficient notice and did not subsequently object to the Sale Order, this Court agrees with the bankruptcy court. See R Star Restaurants, 2010 WL 3329814 at *4; see also 11 U.S.C. § 363(f).

Accordingly, GE's argument, which is contingent upon a finding of error in regard to the bankruptcy court's notice ruling, is without merit. Therefore, because Hilco was a good faith purchaser and GE received adequate notice, such that the sale of GE's assets to Hilco pursuant to 11 U.S.C. § 363 was valid, the elements of statutory mootness are fulfilled. As a result, GE's appeal is dismissed.

D.    Carve Out

Even if GE's challenge to Pacific Cargo's carve out was not statutorily moot, it nonetheless fails on the merits. "A carve out generally refers to an agreement between a secured lender, on the one hand, and the trustee or debtor-in-possession, on the other, providing that a portion of the secured creditor's collateral may be used to pay administrative expenses." In re Cal. Webbing Indus., Inc., 370 B.R. 480, 483 (Bankr.D.R.I. 2007) (citations omitted); see also In re Besset, 2012 WL 6554706, at *5 n.5 (B.A.P. 9th Cir. Dec. 14, 2012). "While there is no reference in the Bankruptcy Code to 'carve outs' for professionals," such that "[t]here is no

Page 23 - OPINION AND ORDER

established form for a carve out agreement, and . . . it can mean different things to different people," out of practical necessity, "the term is commonly included in [sale or asset purchase] agreements." Cal. Webbing, 370 B.R. at 483 (citations omitted). The details of such agreements are "frequently the result of negotiations between the post-petition lender, the unsecured creditor's committee, and approval by the bankruptcy court." Id. at 483-84.

Here, the record indicates that a carve out for the benefit of unsecured creditors was requested by the United States Trustee. ER 227. Throughout the bankruptcy proceedings, the goal was to sell Pacific Cargo as a going concern in order to obtain the highest value for creditors while "protect[ing] the jobs of approximately 200 employees and 50 independent contractors [who] are creditors, unsecured creditors of the estate." ER 224. Even though the attempt to sell Pacific Cargo as a going concern ultimately failed, it was kept open for business in order to enhance the possibility of a going concern sale. ER 224, 606. As such, the United States Trustee recognized Pacific Cargo needed to maintain a "pay to play position [and was] looking for a carve out" to mitigate expenses and pay employees and independent contractors as unsecured creditors of the estate. ER 228.

During each bankruptcy court hearing prior to the auction, a carve out was contemplated, but the specifics remained undefined because it depended on the amount bid and whether Pacific Cargo could be sold as a going concern. ER 224-25. When approving the

Page 24 - OPINION AND ORDER

sale of GE's collateral to Hilco, the bankruptcy court recognized that "as set out by Debtor's counsel at the Sale Hearing, 10% of the total sales proceeds will be distributed to the bankruptcy estate (i.e. $18,000)" because such relief was "in the best interests of the estate, its creditors and other parties in interest." ER 134-35. There is no indication that any other secured creditor objected to this carve out. ER 224-35, 241.

GE now argues, for the first time on appeal, that the bankruptcy court erred in permitting Pacific Cargo to extract a carve out from the sale proceeds without first receiving its consent as the affected secured creditor. GE does not contend that it would have objected to the carve out, only that it was deprived of the opportunity to negotiate or consent thereto. See GE's Resp. to Mot. Dismiss 16-17; GE's Mot. to Stay 8-10.

The Court observes that the resolution of this issue has no effect on Hilco's rights pursuant to the Sale Order, as the carve out only concerns funds in the bankrupt estate trustee's possession. See Hilco's Reply to Mot. Dismiss 19. More importantly, GE failed to raise this issue before the bankruptcy court and therefore it was not preserved for appeal.[8] Rains, 428 F.3d at 902. Regardless, as discussed in section II(B), GE received requisite notice relating to Pacific Cargo's bankruptcy and/or the auction. Other secured creditors received notice, the same notice that was

---

[8] GE's argument that its blanket opposition to the Sale Order included a challenge to the carve out is unpersuasive. Rains, 428 F.3d at 902 (issues must be articulated "with sufficient clarity to preserve the alleged error").

sent to GE, and had the opportunity to oppose the carve out. ER 218-20, 229, 578. Because GE received adequate notice, its failure to object to Pacific Cargo's carve out pursuant to Hilco's purchase, or to otherwise participate in the bankruptcy court proceedings, constitutes waiver. ER 506-07; Cal. Webbing, 370 B.R. at 486 ("a secured creditor's collateral may only be diminished to the extent that the secured creditor waives its right to the protections afforded by the Code") (citation and internal quotations omitted). Thus, the carve out in this case was appropriately approved by the bankruptcy court because consent was obtained from Pacific Cargo, Hilco, and GE.

## CONCLUSION

The bankruptcy court's Sale Order and Opinion are AFFIRMED. As such, Hilco's motion to dismiss (doc. 20) is GRANTED and GE's motion to stay (doc. 1) is DENIED. Pacific Cargo's motion for joinder (doc. 26) is GRANTED. Hilco's request for oral argument is DENIED as unnecessary. This appeal is DISMISSED.

IT IS SO ORDERED.

Dated this 7th day of May 2014.

Ann Aiken
United States District Judge